**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **GREAT WEST CASUALTY COMPANY,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:20-CV-404 (MTT)** |
| | ) | |
| **DIVERSIFIED TRANSPORTATION** | ) | |
| **SERVICES, LLC, *et al.*,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>ORDER</u>

Plaintiff Great West Casualty Company has moved for summary judgment.  Doc. 24.  Great West seeks a declaratory judgment that it owes no duty to defend or indemnify its insured, Defendant Diversified Transportation Services, LLC, in an underlying lawsuit brought by Michael Shae Helton.[1]  Docs. 1; 24.  Because Diversified failed to give timely notice to Great West of the underlying suit and the occurrence it alleged, and the delay in notice was not reasonable and was without justifiable excuse, Great West's motion (Doc. 24) is **GRANTED**.

## I. BACKGROUND[2]

Helton hired Diversified on May 2, 2016 to repair his leaky pond.  Docs. 1 ¶ 7; 15 ¶ 5; 24-1 at 1.  Later that month, Helton attempted to refill the pond, but it still would not

---

[1] Helton is a party to this action.  He has not opposed Great West's motion for summary judgment.

[2] Unless otherwise stated, the facts are undisputed and are viewed in the light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

hold water.  Docs. 1 ¶ 8; 15 ¶ 8.  Sometime thereafter, Helton "notified [Diversified] of the defects with the repair and rebuilding of the pond and Helton asserted a claim against Diversified."  Docs. 1 ¶ 9; 15 ¶ 9; 24-1 at 15.  Significantly, the parties do not say exactly when Helton gave notice, how the notice was given, or even what the notice contained.  But it is undisputed that Diversified did not inform Great West of Helton's "claim."  Docs. 1 ¶ 10; 15 ¶ 10.

On June 18, 2018, Helton sued Diversified in Washington County Magistrate Court for breach of contract, negligent construction, and negligent repair.  Docs. 1 ¶¶ 11-12; 15 ¶¶ 11-12.  It is undisputed that Diversified again did not inform Great West that Helton had filed suit.  Docs. 1 ¶ 13; 15 ¶ 13.  The Magistrate Judge ruled in Diversified's favor as to all claims on September 4, 2018.  Docs. 1 ¶ 14; 15 ¶ 14.  Helton appealed to the State Court of Washington County on October 5, 2018.  Docs. 1 ¶ 16; 15 ¶ 16.  Once again, Diversified did not inform Great West of the state court action.  Docs. 1 ¶ 15; 15 ¶ 15.  The record *suggests* that Diversified retained counsel immediately after the case was appealed to state court, but Great West has not established precisely when counsel was hired and Diversified, understandably, has not filled in that blank left by Great West.  What is clear is that Diversified's lawyer did not send Great West notice of the claim or lawsuit until October 3, 2019.  Docs. 28 at 4; 24-1 at 17-18.  Great West received that notice on October 9, 2019—over fifteen months

after the litigation began and over a full year after the case was appealed to state court.[3]
Docs. 1 ¶ 19; 15 ¶ 19.[4]

Great West's policy has the standard provisions obligating insureds to give
prompt notice of claims and lawsuits that might be covered by the policy.  Specifically,
Diversified "must see to it that [Great West] … [is] notified as soon as practicable of an
'occurrence' or an offense which may result in a claim."  Docs. 1 ¶ 23; 15 ¶ 23; 1-2 at
107.  Further, the policy provides that "[if] a claim is made or 'suit'[5] is brought against
any insured, [Diversified] must … [n]otify [Great West] as soon as practicable and see to
it that [Great West] receive[s] written notice of the claim or 'suit' as soon as practicable."
Doc. 1-2 at 107.

Great West argues that these notice requirements are "valid conditions
precedent under Georgia law."  Doc. 24-2 at 5.  Great West further argues that
Diversified's delay in giving notice was unreasonable as a matter of law, and therefore,
Great West "is not obligated to provide a defense or coverage."[6]  *Id.* at 8.

---

[3] There is no evidence that Helton directly notified Great West that he had sued its insured.  *See
Hathoway Dev. Co., Inc. v. Am. Empire Surplus Lines Ins. Co.*, 301 Ga. App. 65, 68, 686 S.E.2d 855, 860
(2009) ("It makes no difference who gives the notice, so long as a reasonable and timely notice is given
the company and it has actual knowledge of the pendency of a claim or suit.") (citation omitted); *see also*
O.C.G.A. § 33-7-15(c).

[4] Great West is representing Diversified in the underlying lawsuit pursuant to a reservation of rights.
Docs. 1 ¶ 20; 15 ¶ 20.  In response to Great West's motion, Diversified does not contend that Great West
has waived any policy defenses.

[5] The policy defines "suit" as "a civil proceeding in which damages because of bodily injury, property
damage or personal and advertising injury to which this insurance applies, are alleged."  Doc. 1-2 at 112
(quotation marks omitted).

[6] Apart from failure to give timely notice, Great West alleges that the incident giving rise to the underlying
claim is not an occurrence under the policy, and thus, it does not owe a duty to defend or indemnify
Diversified.  Doc. 1 ¶¶ 32-33, 43-44.  However, Great West does not move for summary judgment on that
ground and instead relies only on the issue of untimely notice.  Doc. 24-2 at 2 n.1.

## II. STANDARD

A movant is entitled to summary judgment upon showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the movant bears the burden of proof at trial, it must show there is no genuine dispute that it has met the elements of its claim or defense. *See United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991). The non-movant may defeat a properly supported motion by producing "significant, probative evidence demonstrating the existence of a triable issue of fact." *Id.* (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)). In other words, that there is indeed a genuine dispute regarding a material fact. *See id*.

"A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quotation marks omitted). Therefore, when deciding if summary judgment is appropriate, the court must not "weigh the evidence and determine the truth of the matter" on its own but should determine only whether a reasonable jury could find in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). In doing so, the court should draw all justifiable inferences, and resolve any reasonable doubts concerning the facts, in favor of the non-movant. *Id*. at 255; *Info. Sys. & Networks Corp.*, 281 F.3d at 1224. If, after reviewing the entirety of the record "in the light most favorable to the [non-movant]," the court determines a reasonable jury could not find in

favor of the non-movant, then summary judgment is appropriate.  *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("'[T]he District Court [must] consider all evidence in the record when reviewing a motion for summary judgment—pleadings, depositions, interrogatories, affidavits, etc.—and can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists.'"). (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986)).

### III. DISCUSSION

**A.  Subject Matter Jurisdiction**

The Federal Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  However, the Federal Declaratory Judgment Act alone does not grant federal courts subject matter jurisdiction.  *Borden v. Katzman*, 881 F.2d 1035, 1037 (11th Cir. 1989) ("[A] suit brought under the [Federal Declaratory Judgment Act] must state some independent source of jurisdiction, such as the existence of diversity or the presentation of a federal question.") (citing *Skelly Oil Co. v. Phillips Co.*, 339 U.S. 667, (1950)).  Accordingly, for the Court to have jurisdiction over this case, there must be an independent source of jurisdiction.

Great West alleged that the parties are completely diverse and that more than $75,000 is in controversy.  Doc. 1 ¶ 4.  While is it undisputed that the parties are completely diverse, the Court was not convinced that more than $75,000 is in controversy, so it ordered the parties to address that issue.  *Id.* ¶¶ 2-3; Doc. 31.

Usually, a court will accept a plaintiff's allegations regarding the amount in controversy, and dismissal is only appropriate when "it is apparent, to a legal certainty, that the plaintiff cannot recover [the jurisdictional amount in controversy]." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). However, when a party seeks an indeterminate amount of damages, such as a declaratory judgment, the party seeking federal court jurisdiction must "prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount." *D and R Party, LLC v. Party Land, Inc.*, 406 F. Supp. 2d 1382, 1384 (N.D. Ga. 2005) (citing *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001)). To determine whether the jurisdictional amount is reached, a court measures "the value of the object of the litigation solely from the plaintiff's perspective[.]" *Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 120 F.3d 216, 218 (11th Cir. 1997).

In declaratory judgment actions in which the validity of an entire insurance contract is at issue or when a claim is for the full policy limit, the face value of the policy is the amount in controversy. *Friedman v. New York Life Ins. Co.*, 410 F.3d 1350, 1357 (11th Cir. 2005); *Hartford Ins. Grp. v. Lou-Con Inc.*, 293 F.3d 908, 911 (5th Cir. 2002) (citing 14 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3710 (3d ed. 1998)). However, "in declaratory judgment cases that involve the applicability of an insurance policy to a particular occurrence, 'the jurisdictional amount in controversy is measured by the value of the underlying claim.'" *Company Prop. & Cas. Ins. Co. v. Metal Roofing Sys.*, 2013 WL 5770730, at *2 (S.D. Fla. Oct. 24, 2013) (quoting *Hartford*, 293 F.3d at 911). In other words, when coverage

of a single occurrence or claim is at issue, and the full policy amount is not sought, the policy limits are not the amount in controversy. *Scottsdale Ins. Co. v. Calhoun Hunting Club and Lounge*, 360 F. Supp. 3d 1262, 1266 (N.D. Ala. Dec. 26, 2018); *Kelly v. Gen. Star Nat'l Indem. Co.*, 2007 WL 3034654, at *2 (M.D. Fla. Oct. 16, 2007); *Martins v. Empire Indem. Ins. Co.*, 2008 WL 783762, at *2 (S.D. Fla. Mar. 21, 2008).

Here, Great West is seeking a judgment that it does not owe a duty to defend or indemnify Diversified for a specific claim. Docs. 1 at 11; 24-2 at 2. At first, the Court was unsure if the amount in controversy reached the jurisdictional amount because the complaint filed in Washington County Magistrate Court only alleged that "the [estimated] cost of repairing [Diversified's] negligent work to be no less than $15,000.00[,]" and Diversified completed the allegedly negligent work for only $12,500.00. Doc. 1-1 ¶¶ 9, 18. However, Great West argues in its supplemental brief that the jurisdictional amount is met because Helton has asserted in discovery that "his damages exceed $295,000." Doc. 34 at 1. Great West also attached a "Proposal for Repair" which quoted the repair cost at $294,471.60. Doc. 34-2.

Diversified does not dispute that Helton now seeks more than $295,000. But it focuses on the amount of damages Helton originally sought and what he could have been awarded in Washington County Magistrate Court. Doc. 35 at 2. Diversified argues that "although the Magistrate Court found for [Diversified] in the underlying case, even if it had not, the most it could have awarded was $15,000.00." *Id.* True, but the underlying case was appealed to Washington County State Court, and "an appeal from the magistrate court to the state court is a de novo appeal," and "the state court is to 'try the issue anew and pass original judgment on the questions involved as if there had

been no previous trial.'"  *Scott v. Aaron*, 221 Ga. App. 254, 254, 471 S.E.2d 55, 56

(1996) (quoting *Knowles v. Knowles*, 125 Ga. App. 642, 645(1), 188 S.E.2d 800, 803

(1972)); O.C.G.A. § 15-10-41(b)(1).  Further, there does not appear to be any limitation

of damages that a plaintiff can seek on a de novo appeal of a magistrate court's ruling.

*Handler v. Hulsey*, 199 Ga. App 751, 752, 406 S.E.2d 225, 227 (1991) (stating that

even a new claim may be asserted on a devo appeal, so long as the new claim relates

to the subject of the magistrate court litigation).  Therefore, although the underlying

claim was originally filed in Washington County Magistrate Court, Great West has

established that more than $75,000 is in controversy.  Accordingly, the Court has

subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a).

## B. Whether Great West has Established as a Matter of Law that Diversified Failed to Give Timely Notice of an Occurrence or Suit

Great West argues that because Diversified did not timely provide it notice of the

underlying occurrence or suit, it does not owe a duty to defend or indemnify Diversified

in the underlying case.  Doc. 24-2 at 4.  Under the heading titled "DUTIES IN THE

EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT[,]" the insurance policy states

that policy holders "must see to it that [Great West] … [is] notified as soon as

practicable of an 'occurrence' or an offense which may result in a claim."  Doc 1-2 at

107.  The insurance policy also states that "[i]f a claim is made or 'suit' is brought

against any insured, [Diversified] must … [n]otify [Great West] as soon as practicable

and see to it that [Great West] receive[s] written notice of the claim or 'suit' as soon as

practicable."  *Id.*

Policy requirements that an insured give appropriate notice of occurrences and

suits arising from occurrences are conditions precedent to coverage.  *State Farm Fire*

and Cas. Co. v. LeBlanc, 494 F. App'x 17, 21 (11th Cir. 2012) (citing Forshee v. Emp'rs Mut. Cas. Co., 309 Ga. App. 621, 622-23, 711 S.E.2d 28, 30-31 (2011); Kay-Lex Co. v. Essex Ins. Co., 286 Ga. App. 484, 487-88, 649 S.E.2d 602, 606-07 (2007). When an insured unreasonably fails to satisfy these types of notice requirements, the "insurer is not obligated to provide a defense or coverage." Forshee, 309 Ga. App. at 623 (citing Federated Mut. Ins. Co. v. Ownbey Enterprises, 278 Ga. App. 1, 3, 627 S.E.2d 917, 919 (2006)). Determining whether an insured has timely complied with a notice requirement is circumstance specific; often turning on whether the insured's excuse justifies the late notice. LeBlanc, 494 F. App'x at 23; Gibson v. Dempsey, 167 Ga. App. 23, 24, 306 S.E.2d 32, 33 (1983); Canadyne-Georgia Corp. v. Continental Ins. Co., 999 F.2d 1547, 1555 (11th Cir. 1993) ("Absent some justification, failure to provide timely notice of an occurrence can defeat coverage under such a policy."). Importantly, there is no requirement that an insurer must show it was prejudiced from an insured's failure to give timely notice. LeBlanc, 494 F. App'x at 21 (citing Caldwell v. State Farm Fire & Cas. Ins. Co., 192 Ga. App. 419, 420, 385 S.E.2d 97, 99 (1989); Se. Express Sys., Inc. v. S. Guar. Ins. Co. of Ga., 224 Ga. App. 697, 701, 482 S.E.2d 433, 436 (1997)).

   1. *Great West has not established that Diversified failed to give notice of an occurrence before Helton filed suit.*

   The policy requires that Diversified give notice to Great West of any "occurrence or offense which may result in a claim." Doc. 1-2 at 107. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 111. It is undisputed that before filing suit, Helton notified Diversified of the defects with the pond repair and that Helton "asserted a claim" against Diversified. Docs. 1 ¶ 9; 15 ¶ 9; 24-1 at 15. However, Great West does not allege,

much less establish, that Helton's pre-suit notice to Diversified concerned an

"occurrence" that might be covered by the policy.  For example, the notice may have

alleged only a contract claim, which could excuse Diversified's failure to notify Great

West of Helton's claim.  Diversified reasonably could think that a contract claim could

not possibly be covered by Great West's policy.  Accordingly, because the Court does

not know what "notice" Helton provided Diversified, the Court cannot say as a matter of

law that Diversified failed to give timely notice of an occurrence before Helton filed suit.

> 2. *Great West has established that Diversified failed to give timely notice once Helton filed suit.*

Whatever Helton's pre-suit notice may have said, his June 18, 2018 Magistrate

Court complaint undisputedly alleged claims triggering Diversified's obligation to give

Great West notice.  Docs. 1 ¶ 25; 15 ¶¶ 25, 32.  Specifically, Helton alleged claims for

breach of contract, negligent construction, and negligent repair.  Docs. 1 ¶¶ 11-12; 15

¶¶ 11-12.  Diversified admits that at that point it was contractually obligated to give

notice to Great West "as soon as practicable."[7]  Docs. 1 ¶ 23; 15 ¶ 23; 28 at 3.

Diversified argues, however, that whether the notice it gave to Great West fifteen

months later was timely is a question for the jury.  Doc. 28 at 3.  Depending upon the

insured's excuse for delayed notice, "the question of whether an insured gave notice of

an event or occurrence 'as soon as practicable,' … is a question for the factfinder," but

Georgia courts, depending on the circumstances, have not hesitated to find that an

---

[7] Diversified admits that it did not give Great West notice "as soon as possible," but it argues that it was only required to give notice "as soon as practicable."  Doc. 28 at 3.  However, there is no material difference between these two phrases when used in insurance notice requirements.  Georgia courts have held that the two phrases, and other similar phrases that indicate prompt notice, have the same meaning.  *LeBlanc*, 494 F. App'x at 22; *Advocate Networks, LLC v. Hartford Fire Ins. Co.*, 296 Ga. App. 338, 340-41, 674 S.E.2d 617, 619-20 (2009*); Roberson v. Weaver*, 145 Ga. 626, 626, 89 S.E. 769, 773 (1916); *Auto-Owners Ins. Co. v. Bailey*, 378 F. Supp. 3d 1213, 1223 (M.D. Ga. 2019).

"insured's delay in giving notice of an accident to his insurer was unreasonable as a matter of law." *Plantation Pipeline Co. v. Royal Indem. Co.*, 245 Ga. App. 23, 25, 537 S.E.2d 165, 167 (2000) (quotation marks and citation omitted); *LeBlanc*, 494 F. App'x at 23 (four-month delay was unreasonable); *Auto-Owners Ins. Co. v. Bailey*, 378 F. Supp. 3d 1213, 1223-27 (M.D. Ga. 2019) (five-month delay was unreasonable); *Diggs v. Southern Ins. Co.*, 172 Ga. App. 37, 37, 321 S.E.2d 792, 793 (1984) (three-month delay was unreasonable).

Thus, Diversified *perhaps* could avoid summary judgment if it offered a plausible excuse for its failure to notify Great West of Helton's suit.  But it doesn't.  Diversified argues that its failure to inform Great West of Helton's pre-suit claim should be excused because Diversified did not then have an attorney.  That essentially is an "ignorance of the policy" argument, which has been *thoroughly* rejected by Georgia courts.  *Allstate Ins. Co. v. Walker*, 254 Ga. App. 315, 316, 562 S.E.2d 267, 268 (2002) (citing *Protective Ins. Co. v. Johnson*, 256 Ga. 713, 714, 352 S.E.2d 760, 761 (1987)).

As discussed, Great West has failed to put the contents of the pre-suit notice in the record; consequently, it is possible to imagine a notice so deficient or subtle that Diversified, without a lawyer, possibly could reasonably claim that it had no duty to inform Great West of Helton's claim.  But it is undisputed that Helton's lawsuit alleged occurrences that might be covered by the policy, triggering Diversified's duty to give notice.  Diversified offers no excuse for its failure to give notice once it received Helton's lawsuit.

Apart from its lack of counsel excuse, Diversified's only clearly stated argument for avoiding summary judgment is that Great West has not been prejudiced by its failure

to give timely notice.  Doc. 28 at 4-6.  However, there is no requirement that an insurer

show that it was prejudiced by an insured's failure to provide timely notice.[8]

Diversified does point to one case, *JNJ Foundation Specialists, Inc. v. D.R.*

*Horton, Inc.*, to support its argument that an insurer's lack of prejudice may be

considered when an insured fails to forward a lawsuit to an insurer.  311 Ga. App. 269,

717 S.E.2d 219 (2011).  Diversified reads far too much into *JNJ Foundation Specialists*.

Two judges on the Georgia Court of Appeals panel wrote that "although [an insurer] is

not *required* to show prejudice … the insurer's failure to demonstrate prejudice may be

considered." *Id*. at 275-76.  But the majority did not make clear what that means.  In

any event, the third judge in the panel concurred only in the judgment, and thus the

case has no precedential value.  Ga. Ct. App. R. 33.2(a)(2).  Moreover, whatever the

majority intended, its prejudice analysis applied only to the insured's failure to forward a

lawsuit.  Here, when Diversified failed to forward Helton's lawsuit, it also breached its

duty to give notice of the occurrence clearly alleged in the lawsuit.  In other words, by

failing to notify Great West that it had been sued, Diversified breached both its duty to

give notice of an occurrence and its duty to forward suit papers.  Finally, *JNJ*

*Foundation Specialists* is clearly distinguishable on its facts.  There, there was "no

contention that [the insurer] did not receive notice of the [underlying suit] when its

[named] insured … received notice." *JNJ Foundation Specialists*, 311 Ga App. at 276.

Here, on the other hand, it is undisputed that Diversified, Great West's named insured,

[8] However, because this case was originally filed in Washington County Magistrate Court, Great West may have suffered prejudice despite Diversified prevailing at that level.  For example, if Great West had been timely notified of the suit, it could have investigated the claim and may have suggested immediately settling the case for $15,000—the maximum possible award in magistrate court and far less than Helton now seeks.  O.C.G.A. § 15-10-2(a)(5).

was named and served in the underlying lawsuit, and Great West did not receive notice of that lawsuit for fifteen months.

In conclusion, it is undisputed that Diversified's insurance policy obligated Diversified to notify Great West as soon as practicable of an occurrence that might be covered by the policy and of a suit filed against Diversified.  Docs. 1 ¶ 23; 1-2 at 107; 15 ¶ 23.  It is further undisputed that Diversified did not notify Great West of the lawsuit or the occurrence it alleged until October 9, 2019, some fifteen months after the lawsuit was filed.  Docs. 1 ¶¶ 11-19; 15 ¶¶ 11-19; 24-1 at 15.  Finally, Diversified has not come forward with any reasonable excuse or justification for this lengthy delay.  Accordingly, the Court finds that Diversified failed to comply with the policy's notice requirements, and therefore, Great West has no duty to defend or indemnify Diversified in the underlying suit.

## IV. CONCLUSION

For the reasons stated above, Great West's motion for summary judgment (Doc. 24) is **GRANTED**.

**SO ORDERED**, this 9th day of June, 2021.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT